IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| TIMOTHY D. SHELTON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| | ) No.: |
| v. | ) |
| | ) JURY DEMAND |
| | ) |
| PREVAIL WATER, INC, A TENNESSEE | ) |
| CORPORATION, PERCY JONES, JR., | ) |
| JIMMY M. PARKER, JOHN DOE AND | ) |
| MARY ROE 1 TO 10 | ) |
| | ) |
| Defendants. | ) |

## VERIFIED COMPLAINT

**NOW COMES** the Plaintiff, Timothy D. Shelton and by and through his attorney, Casey Long, for Complaint against Defendants, states and alleges the following:

### THE PARTIES

1. Plaintiff is an individual residing at 1030 County Road 108 Rogersville, Alabama.

2. Defendant Prevail Water, Inc is a Tennessee Corporation with the business address of 465 Cascade Rise Court, Atlanta, Georgia 30331.

3. Defendant Percy Jones, Jr. is an individual residing at 465 Cascade Rise Court, Atlanta, Georgia 30331.

4. Defendant Jimmy M. Parker is an individual residing at 3220 Chisholm Road Iron City, Tennessee.

### JURISDICATION AND VENUE

1

5. This Court has original jurisdiction over this action under the provisions of 28 U.S.C. §1332 because this action is between citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

6. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because Defendant resides in this District, because the real property at issue is located in this District and because a substantial part of the events or omissions giving rise to the claim occurred in this District.

## SUMMARY OF LAWSUIT

7. On March 17, 2020, Defendant Jimmy Parker sold the subject property to Plaintiff for $12,500 and the "aquifer/water rights" to a spring on the property for $1,800,000. On December 31, 2020, Defendant Parker increased the acreage to 105 acres, purchase price to $2,050,000 and the sale to be completed by June 30, 2021. Exhibit 2.

8. On February 18, 2021, Defendant Parker sold the same 5 acres, aquifer and mineral rights for $1,812,535 to Defendant Prevail Water, Inc. Exhibit 3.

9. Thereafter, Defendants and others by inducement, persuasion, misrepresentation, fraudulent concealment and other means did induce, procure and cause the breach of Plaintiff's contract with Defendant Parker, so Defendant could retain Plaintiff's $25,000.00 option payment, and complete the second sale of the same property to Defendant Prevail, in violation of Tenn. Code Annotated §47-50-109 and other common law causes of action.

10. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has suffered delay damages to date with a present value of at least $1,100,000.00. If Plaintiff is unable to complete the purchase of the subject property and compete his plan to build a bottling

plant on the site, the present value of his damages will be in excess of $20,000,000.00. Both of the Defendants had actual knowledge that their unlawful conduct would cause such damages when they engaged in the unlawful conduct.

## ACTION SEEKING RECOVERY SPECIFIC PERFORMANCE FOR SALE OF REAL PROPERTY AND AQUIFER/WATER RIGHTS DESCRIBED WITHIN EXHIBIT 2

11. This action involves and affects title to the real property described in the Attached Exhibit 1. It also affects title to the water rights and aquafer rights described in Exhibits 2 and 3.

## FACTS

12. In 1990 a dispute arose over the natural spring located on the real property at issue in the present lawsuit. Attorney George G. Gray, now The Gray Law Firm, George G. Gray (deceased) represented Defendant Jimmy M. Parker et. al. in an ejectment action against the adjoining landowner, Euple I. Palmer, filed in the Chancery Court of Wayne County, Tennessee on October 10, 1990, Civil Action No. 8446.

13. Defendant Jimmy Parker and his brothers and sisters were Plaintiffs in the ejectment action.

14. The lawsuit arose because there was a natural spring located 17 feet onto Jimmy Parker's property according to the surveyed common boundary. Euple Palmer bought the adjoining property and alleged that an old fence line to keep the cows out of the spring jogged above the spring making it appear, according to the fence, that the natural spring was located on the property Euple Palmer's had just purchased. Euple Palmer bought the property and placed a concrete box (tube) over the spring 17 feet onto Mr. Parker's property according to the surveyed boundary line. Mr. Palmer apparently knew the spring

3

was actually located on Defendant Parker's property because he extended the concrete box another 15 feet further onto his property and then put in a pump house that was used to pump water to a 5 gallon bottling plant Euple Palmer built on his proeprty.

15. After three years of litigation, on March 18, 1993 the parties entered into a stipulated FINAL JUDGEMENT attached hereto as Exhibit 4 .

16. After the FINAL JUDGEMENT was entered, Euple Palmer placed leaves and dirt over the concrete box (tube) on Defendant Parker's property, apparently with the Parker family's acquiescence and told everyone the spring was located under the pump house on Palmer's property.

17. Euple Palmer also told everyone his spring was "Licensed" by the State of Tennessee and that he had a Withdrawal Permit from the State of Tennessee, both of which were required by the Federal Food and Drug Administration (FDA) Regulations to sell bottled water to the public in interstate commerce. Euple Palmer sold his bottled water in Tennessee, Alabama, Mississippi, Louisiana, Illinois, Florida and Indiana, among other places.

18. The representations that the spring was "licensed" and had a Tennessee "Withdrawal Permit were false. Neither the Palmers, nor the Parkers, (who always claimed to own the spring), ever applied for or received the license and withdrawal permit required by the Federal Food and Drug Administration (FDA) Regulations to sell bottled water to the public in interstate commerce.

19. Euple Palmer and his son Larry Palmer operated the bottling plants without a license or withdrawal permit for 27 years, endangering the health and safety of the public in violation of State and Federal Law.

4

20. The Parker family and Defendant Jimmy Parker allowed Euple Palmer and his son Larry Palmer to operate the bottling plants without a license or withdrawal permit for 27 years, endangering the health and safety of the public in violation of FDA Regulations, State and Federal Law.

21. On March 30, 2000 Jimmy Parker bought the property from his brothers and sisters. The conduct of the Parker family from March 17, 1993 to March 31, 2000 and Defendant Jimmy Parker from March 31, 2000 until July 23, 2018 was particularly dangerous to the public because in addition to not having a license or withdrawal permit for their spring, the Parkers and Defendant Jimmy Parker allowed their cattle to drink from leakage around the spring, so there was a soup of cow feces and urine constantly on top of and around the concrete box from which the Palmers drew their water for sale to the public. This posed a continuous clear and present danger to public health because the concrete box (tube), had cracks in it and a cement cover on Parker's property that was not sealed.

22. Both the Parkers and the Palmers exhibited a willful indifference to the health and safety of the public for 27 years.

23. Jimmy Parker told Plaintiff Shelton many times that he testified in a trial or hearing in 1993 and while he was on the witness stand, Euple Palmer stood up in Court and said he would just tear the box over the spring out. Jimmy Parker represents he told Euple Palmer and the Court that he did not want Euple Palmer to tear it out, that when he wanted the water, he would tear the box over the spring out. Jimmy Parker has informed Plaintiff that his deceased brother negotiated the stipulated Final Judgement while he was working out of state, so he has no first-hand knowledge of the negotiations leading to the 1993 Stipulated Final Judgment. Exhibit 4.

24. In 2016 Euple Palmer gave Plaintiff a 10-year option to purchase his "licensed spring" for $3 million in exchange for improvements to the front of the concrete box on Euple Palmer's property, running a water line to the PET plant and paying $200 per month rent on a house on the property. Plaintiff completed all the requirements and paid the rent through 2026 so his option with Palmer is current.

25. In late 2017 and early 2018 Plaintiff with the participation of Defendant Percy Jones attracted an investor who was going to invest $20 million in a large-scale PET bottling plant. The investor was ready to make the investment, when Attorney George Gray, who now represented Euple Palmer, said they could not produce title insurance on the ownership of the spring.

26. In approximately May 2018 Plaintiff was going to make repairs to the Palmer pump house box, so he tied a rope around himself so he would not get sucked into the spring (aquifer) Palmer represented was coming up at the bottom of the pump box. Plaintiff discovered, to his surprise, the pump box had a solid cement bottom.

27. Upon further investigation, Plaintiff discovered the natural spring was not in the spring box on Palmer's property, as the Palmers and the Parkers made it appear by covering up the 17-foot concrete tube with leaves, dirt and cow manure, but was on Jimmy Parker's property. This was confirmed by the FINAL JUDGEMENT. (Exhibit 4).

28. Defendant Percy Jones, on behalf of himself and Plaintiff Shelton, then went to Jimmy Parker, who was then represented by Attorney James Y. Ross, to secure an option on the spring. Defendant Parker, through his counsel, represented that Jimmy Parker had clear title to the "aquifer/water rights" and sold Percy Jones an option to buy 5 acres of land where the spring is located for $12,500 and the "aquifer/water rights" for $1,800,000.

29. Defendant Percy Jones option expired in late 2019 because he could not come up with the minority status, financials or other requirements to get the $20 million SBA loan required to build a PET bottling plant on Parker's property.

30. Beginning prior to March 17, 2020 Plaintiff Timothy Shelton contacted Defendant Percy Jones and proposed that they each put up half the money and secure another option from Jimmy Parker. Defendant Percy Jones said he did not have any money and declined. Plaintiff Shelton informed Defendant Jones he was going ahead himself to secure another option from Jimmy Parker and also informed Defendant Jones in late March or early April 2020 that he had secured a new option. Defendant Jones did not object, although in later telephone conversations he claimed he should be part of the deal. Timothy Shelton always informed Defendant Jones if he could come up with the investor or the money he could be part of the deal.

31. On March 17, 2020, Jimmy Parker copied the option Attorney Ross had drafted for Defendant Percy Jones. In reliance upon Attorney Ross's prior representations and Defendant Parker's representations on and just before March 17, 2020 that Jimmy Parker had clear title to the "aquifer/water rights", Plaintiff Timothy Shelton paid $25,000 to purchase an option to buy 5 acres of land where the spring is located for $12,500 and the "aquifer/water rights" for $1,800,000. Attached and incorporated by reference as Exhibit 2.

32. Plaintiff reasonably relied upon these representations in paying $25,000 for the option attached as Exhibit 2.

33. In November 2020 Plaintiff discovered there might be a problem with the Palmer's having some unspecified claim to Defendant Parker's water rights, so the parties

7

extended the option to June 30, 2021, increased the land to be purchased to 105 acres and left the price of the "aquifer/water rights" at $1,800,000. Exhibit 2. Defendant Parker continued to represent he had clear title to the "aquifer/water rights".

34. In December 2020, Plaintiff sued Larry Palmer and Euple Palmer's estate in Chancery Court of Wayne County, Tennessee, Civil Action No. 2020-CV-6329. On December 24, 2020 Defendant Larry Palmer was served with 2 copies of the Summons and Complaint at his daughter's house in Paris, Texas.

35. The Euple Palmer estate and Larry Palmer did not answer the Complaint. Plaintiff was preparing for the default judgment hearing, which would have resolved any title issues and allowed Plaintiff to move forward with plans to build a large- scale PET bottling plant.

36. Shortly before the default judgment hearing, on February 11, 2021 Larry Palmer and the Euple Palmer estate filed an Answer, being represented by Attorney James Y. Ross and Joshua Polk of George Gray's law firm, representing the Palmers' claims that rights to the spring/aquifer were vested in them.

37. Plaintiff requested that Defendant, Jimmy Parker, object to the conflicted representation and attempt to have Attorney Ross removed as the Palmer's Attorney. Defendant, Jimmy Parker, refused to do so.

38. Defendant Parker refused to object to Attorney Ross's conflicted representation because he was also being represented by Attorney Ross in the second sale of the property as shown by Exhibit 3, paragraph 10. Defendant, Jimmy Parker, concealed and did not disclose that he had secretly sold the property and spring to Defendant, Prevail, on February 18, 2021. Exhibit 3.

39. Larry Palmer, through his counsel, spent more than 4 months delaying the proceedings in Plaintiff's lawsuit against the Palmers and the Palmers were sanctioned for their dilatory tactics.

40. On numerous occasions from approximately March 1, 2021 until June 2021 Jimmy Parker called Plaintiff Timothy Shelton, said Defendant Jones had $33 million lined up to build a bottling plant and offered to give $25,000 back if he would let Defendant Percy Jones take over Plaintiff's option. Defendant, Jimmy Parker, concealed and did not disclose that he had secretly sold the property and spring to Defendant, Prevail, on February 18, 2021. Exhibit 3.

41. Defendants Parker and Jones concealed the fact that Parker had actually sold his real property three time: once to Plaintiff on March 17, 2020, a second time to Plaintiff on December 31, 2020 and a third time to Defendant Prevail Water, Inc. on February 18, 2021. Exhibits 2 and 3.

42. Plaintiff had an investor willing to exercise the $2,050,000 amended option provided Defendant Jimmy Parker had clear title to the "water rights" as he had always represented. The expiration date on the option was June 30, 2021, so time was critical and Jimmy Parker's Attorneys knew it was critical.

43. The investor wanted to see what Larry Palmer said at his deposition before he risked his $2,050,000. Plaintiff's Attorney began seeking Larry Palmer's deposition in March 2021 and was put off until June 18, 2021. Palmer's counsel was ill on June 18th, 2021 so Larry Palmer's deposition was postponed until June 25th, 2021, 5 days before Plaintiff's option expired and Plaintiff would be in breach of contract forfeiting his $25,000 option payment and right to purchase the property and aquifer/water rights.

44. On June 25, 2021 Larry Palmer sat for his deposition. At the deposition, Larry Palmer took the position, with Attorney Ross and Polk present, that he and his father owned Defendant Parker's water rights for "eternity" because of the March 17, 1993 Final Judgment.

45. After Larry Palmer's deposition was over, Attorney Ross served Plaintiff with a COUNTER COMPLAINT asserting among other things that the Palmer's owned Defendant Parker's water rights.

46. If Larry Palmer's claims, through his shared counsel with Defendant Parker, on behalf of the Palmer's are correct, then Defendant Parker committed fraud in selling an option to Plaintiff for $25,000 (Exhibit 2).

47. If Larry Palmer's claims, through his shared counsel with Defendant Parker, on behalf of the Palmer's are correct, then Defendant Parker attempted to sell something he did not own for $1,800,000, a per se fraudulent act.

48. If Larry Palmer's claims, through his shared counsel with Defendant Parker, on behalf of the Palmer's are correct, then the "aquifer/water rights" in the option (Exhibit 2) are worth $0, instead of $1,800,000.

49. Plaintiff recently discovered that the conduct of Defendant Parker since February 11, 2021, has been a conspiracy to induce and procure Plaintiff's breach of his option contract with Parker (Exhibit 2) by the inducement, persuasion, misrepresentation, fraudulent concealment and other means described above, so Defendant Parker could keep Plaintiff's $25,000 option payment and complete the third sale of the same property to Defendant Prevail Water, Inc. as shown in Exhibit 3.

50. After being informed of Larry Palmer's testimony at his deposition and service of the Counter Complaint, Plaintiff's investor, of course, refused to have anything more to do with investing $2,050,000 to buy Parker's property, which according to Parker's lawyers and their other client Larry Palmer, Parker's $1.8 million "water rights" have a major cloud on the title and any further participation by Plaintiff's investor would make him a Defendant in a lawsuit.

51. By the actions and conduct described above, Defendant Parker and his Attorneys and Defendant Prevail Water and Percy Jones did induce, procure and cause the breach of Plaintiff's contract with Defendant Parker, in violation of Tenn. Code Annotated §47-50-109 and other common law causes of action.

52. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has suffered delay damages to date with a present value of at least $1,100,000.00, and continuing at the rate of approximately $220,000.00 per month until this matter can be adjudicated.

53. If Plaintiff is unable to complete the purchase of the subject property and compete his plan to build a bottling plant on the site, the present value of his damages will be in excess of $20 million.

54. All of the Defendants had actual knowledge that their unlawful conduct would cause damages to Plaintiff in excess of $20 million if their scheme to sell the same property 3 times was successful.

## FIRST CAUSE OF ACTION
## TENNESSEE CODE 47-50-109

55. Plaintiff re-alleges all prior paragraphs as if fully set forth herein.

56. By the actions and conduct described above, Defendant Parker, Defendant Prevail Water and Percy Jones did induce, procure and cause the breach of Plaintiff's contract with

11

Defendant Parker, in violation of Tenn. Code Annotated §47-50-109 and other common law causes of action.

57. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has suffered delay damages to date with a present value of at least $1,100,000.00.

58. If Plaintiff is unable to complete the purchase of the subject property and complete his plan to build a bottling plant on the site, the present value of his damages will be in excess of $20,000,000.00.

59. All of the Defendants had actual knowledge that their unlawful conduct would cause damages to Plaintiff in excess of $20,000,000.00 if their scheme to secretly sell the same property 3 times was successful.

## SECOND CAUSE OF ACTION
## SPECIFIC PERFORMANCE

60. Plaintiff re-alleges all prior paragraphs as if fully set forth herein.

61. The real property described in Exhibit 1 and the "aquifer/water rights" described in Exhibit 2 are extremely unique and irreplaceable, because among other things, to the location of the spring, the volume of flow of spring water, the total dissolved solids (TDS) and undetectable levels of Tridium.

62. After off-sets for the damages described above, Plaintiff requests that this Court use its equitable powers to compel the transfer of title to the real property described in Exhibit 1 and the "aquifer/water rights" to Plaintiff.

## THIRD CAUSE OF ACTION
## FRAUD

63. Plaintiff re-alleges all prior paragraphs as if fully set forth herein.

64. The conduct of Defendants described above constitutes deceit, collusion, and the tort of fraud per se.

65. As a direct and proximate result of Defendants' fraudulent and deceitful conduct, Plaintiff has suffered delay damages to date with a present value of at least $1,100,000.00.

66. If Plaintiff is unable to complete the purchase of the subject property and complete his plan to build a bottling plant on the site, the present value of his damages will be in excess of $20,000,000.00.

67. All of the Defendants had actual knowledge that their unlawful conduct would cause damages to Plaintiff in excess of $20,000,000.00 if their scheme to secretly sell the same property three times was successful.

## FOURTH CAUSE OF ACTION

## TORTIOUS INTERFERENCE WITH CONTRACT

68. Plaintiff re-alleges all prior paragraphs as if fully set forth herein.

69. Defendants Prevail Water, Inc and Percy Jones had actual knowledge of Plaintiff's options with Defendant Parker.

70. The conduct of Defendants Prevail Water, Inc and Percy Jones constitutes the tort of tortious interference with contract and prospective economic advantage.

71. As a direct and proximate result of Defendants Prevail Water, Inc and Percy Jones tortious conduct, Plaintiff has suffered delay damages to date with a present value of at least $1,100,000.00.

72. If Plaintiff is unable to complete the purchase of the subject property and complete his plan to build a bottling plant on the site, the present value of his damages will be in excess of $20,000,000.00.

73. All of the Defendants had actual knowledge that their unlawful conduct would cause damages to Plaintiff in excess of $20,000,000.00 if their scheme to secretly sell the same property three times was successful.

## FIFTH CAUSE OF ACTION
## CIVIL CONSPIRACY

74. Plaintiff re-alleges all prior paragraphs as if fully set forth herein.

75. With respect to the First and Third Causes of Action Defendant Parker did unlawfully conspire with Defendant Prevail Water and Percy Jones to commit fraud and did induce, procure and cause the breach of Plaintiff's contract with Defendant Parker, in violation of Tenn. Code 47-50-109 and other common law causes of action.

76. As a direct and proximate result of Defendant this Civil Conspiracy, Plaintiff has suffered delay damages to date with a present value of at least $1.1 million.

77. If Plaintiff is unable to complete the purchase of the subject property and complete his plan to build a bottling plant on the site, the present value of his damages will be in excess of $20 million.

78. All of the Defendants had actual knowledge that their unlawful conduct would cause damages to Plaintiff in excess of $20 million if their scheme to sell the same property three times was successful.

79. All of the Defendants are jointly and severally liable for the damages described above.

WHEREFORE, Plaintiff prays for Judgment jointly and severally against all Defendants on Causes of Action First, Third, Fourth and Fifth and against Defendant Jimmy Parker, on the Second Cause of Action as follows:

1. For damages as proved at trial in an amount of at least $1,100,000.00 and potentially exceeding $20,000,000.00; and
2. For specific performance as provided in the Second Cause of Action in order to mitigate Plaintiff's damages; and
3. For treble the amount awarded in the First and Fourth Causes of Action; and
4. For such other and further relief as the Court deems just and equitable.

Respectfully submitted

Casey Long BPR #028225
The Long Firm, LLC
P.O. Box 575
Lawrenceburg, TN 38464
(931) 762-8800 (Office)
1-(615) 468-4790 (Fax)
Attorney for Plaintiff

**STATE OF TENNESSEE** )

**COUNTY OF** _Lawrence_ )

I, _Timothy Shelton_, having first been duly sworn, do hereby make oath and affirm that I am the Plaintiff in the foregoing Complaint and that facts and matters alleged therein are true and correct to the best of my knowledge, information, and belief, and that this Complaint is not made out of levity toward the Defendant(s), but in sincerity and truth for the causes mentioned therein.

This _14_ day of _July_, 2021.

_Timothy Shelton_
**Timothy Shelton**

Sworn to and subscribed before me
This _14_ day of _July_, 2021.

_____
NOTARY PUBLIC

My Commission Expires: _9/28/24_

[Notary Seal: CASEY A. LONG, STATE OF TENNESSEE NOTARY PUBLIC, LAWRENCE COUNTY]